The next case on the calendar is Gomez v. Whitaker. Good morning, Your Honor. Please, the court. My name is Glenn Formica from the law firm of Formica Doyle in New Haven, Connecticut. May I just inquire of Judge Walker, may I proceed this morning? Yeah, I'm going to recuse myself in this case. Thank you, Your Honor. And I apologize, I didn't realize the panel this morning. Your Honor, this is a, no. Your Honor, this is an immigration appeal from the Hartford Immigration Court. And it really involves three issues. Initially, when it was presented to the court two years ago, it involved one issue, really, whether or not the immigration judge, Judge Michael Strauss, you know, made an error in deciding the Convention Against Torture claim of my client from Honduras, who had fears based on violence against his family that was happening down there, and secondarily, fear connected with his tattoos, which were family and religious in nature, but he was concerned would be perceived as being related to gangs, and therefore incarcerated. That was the case, and just based on the Convention Against Torture claim, we feel that, you know, Judge Strauss set too high of a standard. In the government's brief, I believe at page 17, they refer to it as a very high standard, and that's common language of the courts. The error with that, of course, is that that very high standard, as it's reflected at 8 CFR 208-16, is more likely than not. That's the civil standard, 51-49%. And we believe that on his Convention Against Torture claim, he certainly was, at a minimum, 51% more likely than not to have a, to Honduras and be tortured either at the hands of the gangs or by the government. Now- Are we not limited at this stage to constitutional claims and questions of law? Do I actually get to, do we actually get to look back at his factual findings regarding whether or not your client qualifies for the Convention Against Torture? Only to the extent that he made an error in applying the standard put forward in 8 CFR 208. Now, the two other issues that came up in there, because the state of immigration law is incredibly fluid, there was the Dimia decision, which this court graciously gave us an additional opportunity to brief on, which looked at 16b regarding a crime of violence. Now, the government has briefed saying that, well, you don't need to really consider that because this should fall under 16a. And to a point- The agency relied on 16b alone. But the agency relied on 16b. And in our brief, we had this issue, do we go there or don't we go there? And we decided in our responsive brief that we shouldn't go there for a good reason. One is it's not there in the administrative record at this stage. The charge was that it was a crime of violence under 16b. And in that regard, Dimia has clearly overturned it. Now, an important factual thing to understand about this case, as opposed to maybe a different case, is that we're talking about a lawful permanent resident who, of course, has higher due process because he's been a permanent resident. And the fact that he lost his permanent residence should impress the court to look very critically at the government's arguments that somehow we can just wash over the fact that he was removed under 16b and go to a consideration of 16a somewhat retroactively. So that's under the Dimia decision. The court really should go back and say to the BIA, either you decide this or remand it further to the immigration judge, start the proceedings over. But- Why wouldn't we do that though? I mean, as the government argues that this is really a question of law, the constructions of this Connecticut statute, its construction is not something within the expertise of the agency. Why can't we do the analysis ourselves? Your Honor, you could if there was an adequate record. And the agency can't have it both ways. They can't come into court sometimes and say, no, no, this is our terrain, immigration's us, you, the judiciary, stay away. You can't look at this. And then, on other occasions, come in and say, actually, given that we overlooked something, given that we didn't give them the process, the due process through our administrative procedures, you can go ahead and just decide this for us today and make it tidy. That argument's, I believe, ineffective and really has no carry and should have no carry. The one thing I want to get to, though, is so if that wasn't enough, if Dimia wasn't enough, Pereira v. Sessions came out after briefing. And that's, of course, the case from an immigration lawyer's perspective, just keeps on giving. It's like the one gift in 20 years since IRA, IRA that we've received. And Pereira says that, of course, that NTA, because it's a statutory creature, needs to follow the statute, and in this case, that NTA didn't have the date, time, and place. Now, as a practical matter, Pereira, every day in immigration court, is sometimes without any real consequence. Because if you have someone who was served in NTA three weeks ago, they're applying for asylum. Are you really going to challenge the NTA and just make the government reissue it? No, but when you have the government trying to take away somebody's lawful permanent residence and their charging document in that respect is defective. Well, that's a situation where we really should have the NTA looked at and held to its most strict statutory interpretation. Is it not correct that there was a later notice that provided the date and time of the hearing? There was, Your Honor, but the record that we have, the NTA that was served on him, the one that I believe, if I have the record correct in my mind, that he was removed on, didn't have. He was given a hearing notice after the fact. Yes, are you suggesting that an NTA could never be fixed if it failed to include the date and time of the hearing? Well, of course, Your Honor, because first of all, that's what the Supreme Court has generously informed us. Well, no, but Pereira was a stop loss calculation for purposes of cancellation of removal. So I'm not sure that we're going to be extending it to other forms. Correct, but it's almost poetic where Justice Sotomayor says an NTA that does not include the date and time is not an NTA. I mean, it's just a very clear statement that the court is basing Pereira, the starting point of Pereira, is that the NTA has to meet the requirements of an NTA. And I understand that there's huge consequences because we've got 15 or 20 years of NTAs saying, we'll get to you later. I understand that, but from the Supreme Court's view in Pereira, they're saying, listen, you have a statutory document, it needs to meet the statutory requirements. So I'd respectfully disagree with that view that, or even the agency's decision in Bermudez-Codez, that somehow we can patch it up later. Because that actually applied under the old law, not to get into the weeds here, but that was the situation if you were removed prior to April 30th, 1997. Because the old statute, and again, I'm getting into the weeds, but the old statute said, you could attach the hearing notice as long as you receive the hearing notice later. So, Congress very clearly changed it, and this is what we have. Thank you, Your Honor. Thank you, Your Honor, good morning. And may it please the court, Keith McManus on behalf of the Attorney General. Your Honor, the case begins with the 16A analysis because the finding of removability is the threshold question here. And it also informs the court's jurisdiction and the extent to which it can reach other legal and constitutional issues in this case. Contrary to my colleague's suggestion, the court can, in fact, reach the 16A question in the first instance on its own for a number of reasons. Not the least of which is the court abides by the doctrine of futility as an exception to the Chenery Rule. So despite the fact that the immigration judge herself relied only on the 16B determination, the question is whether petitioner is in fact removable as an aggravated felon under a separate statutory provision that does not specify a charge based on 16A or B. Either way, he's removable, and the court can reach that question in the first instance because it is a question of law. The court reviews de novo and is not informed by the agency's expertise. As Judge Lennison pointed out, the board and the IJ have no expertise on interpreting Connecticut statutes or the federal criminal statute. And so despite the fact that the 16A issue was not decided specifically by the IJ or the board, and not to mention the fact that petitioner didn't raise that issue on appeal to the board and therefore failed to exhaust it. The court can and should decide for itself that as a matter of law, this Connecticut conviction is a crime of violence under 16A. And frankly, your honor, that decision or that issue is now controlled by circuit precedent. The Linoeva is an intervening decision in which the court said that the identical violent felony definition under the ACCA, this Connecticut statute falls within that. The elements clause, the use of force clause. The two force clauses are almost identical, and we did say that it is categorically a crime of violence under 924E, but we haven't said that in a published opinion with regard to this statute. With regard to 16A, your honor, that's correct, but there is a statement in Villanueva accepting the petitioner or the defendant's claim there that 16A and the provision of the ACCA are identical. And the court in other contexts has equated the two. So, and I find it very telling, your honor, that there has never been a claim from petitioner that his crime is not in fact a COV under 16A. He wants to sort of confess and avoid and say that the court shouldn't reach that issue because the agency did not. And to answer his argument, in fact, in this context, your honor, the government can have it both ways. There may be issues, factual issues, that if the agency does not decide, the ordinary remand rule would require the court to send it back so that those issues could be decided in the first instance. When it comes to removability, particularly post mathis, the court can and legal issues in the first instance because there's nothing more for the agency to say. Particularly in a case like this, where the result would have to be controlled by binding circuit precedent. So with that, your honor, because petitioner is removable as an aggravated felon, the court's review is limited to constitutional legal claims under the statute. And with regard to the only application submitted below, the cat claim, there are no reviewable, colorable, legal, or constitutional claims. As petitioner's counsel suggests, really all he's quarreling with is the agency's underlying fact finding and the weighing of the evidence. And that is simply something the court cannot review in the context of this case. If there were some sort of- What he just said to me today was that there is a question of law because the IJ used the wrong standard in making these determinations. Do you agree that use of the wrong standard would be a question of law that we could review? And do you agree, as a factual matter, that his analysis of the IJ's decision is correct? To answer your second question, your honor, the IJ's decision is correct. It does not use a wrong standard. It is the correct standard. To answer your first question, it's a difficult sort of line to tow because arguably the use of the incorrect legal standard would be a reviewable legal question, right? But the court has made clear that it must distinguish between legitimate legal claims that require review on the merits. And sort of the invocation of the same sort of legal rhetoric that might sort of dress up fact finding determinations or disputes in legal garb. In which case the court wouldn't have jurisdiction. So it's difficult to say, your honor, whether or not the court can just or should just say, okay, we'll call that a legal error, but we'll dismiss it as lacking merit. In our view, petitioner failed to raise a colorable claim in the first instance and the court should stop at the threshold and say we don't have jurisdiction. But in any event, your honor, the government prevails because there is no legal error here. The IJ did employ the correct standards, cited the correct regulations and statute in control, also cited controlling precedent, the board did the same. And so there's simply no indication that the agency went outside the context of a CAC claim and applied or misapplied the standard. What about the Pereira argument that the decision properly understood has to extend beyond the stop time rule? Frankly, your honor, that interpretation is simply wrong. And the Ninth Circuit very plainly and persuasively laid out recently why in Karen Ginthy. And in doing so, they joined the Sixth Circuit, the only other court of appeals to directly address the Pereira issue in a published opinion. As well as the board, who issued a precedential decision in matter of Bermuda's Cota. In saying that Pereira simply has no application to a case like this. And it's not just because, your honor, that this is not a cancellation case that involved the stop time rule. That certainly is one aspect of the government's position. But more importantly, what petitioner is trying to do is graft a broad jurisdictional ruling. Onto what was a very narrow decision in Pereira. Pereira's hook was the interplay or intersection between two specific statutory provisions. The stop time rule in the cancellation statute and its own cross reference to the statutory definition of a notice to appear in 1229A. The immigration court's jurisdiction, by contrast, is controlled by the relevant immigration regulations. Which say nothing about a notice to appear having to include a date and time of proceedings. Jurisdiction vests, your honor, when an NTA that complies with the regulations is filed in immigration court. Those regulations say nothing at all about the statutory definition of a notice to appear in 1229A. Vice versa, 1229A says nothing at all about the immigration court's jurisdiction. And again, this is laid out very plainly in Karen Ginty. The idea is that you can basically have two notices to appear in terms of a definition. The regulations define a notice to appear one way. And when that document, in this case, the document that petitioner received that did not include the date and time of proceedings. When that was filed with the immigration court, jurisdiction vests. Now, that same document could not be used to then cut off his period of continuous physical presence if he had applied for cancellation. But that's not relevant here. And- Regulations refer to jurisdiction vesting upon a charging document being filed. And you're saying that the charging document refers to the NTA, which the regulations then do not require to have a time or place. Precisely, your honor. The regulations not only define the contents of the NTA for purposes of jurisdiction, but then define when jurisdiction vests. 1229A, which again was the hinge upon which Pereira tilted, has nothing at all to do with this case. And I mean, Mr. Formica sort of acknowledged the sort of breadth of the implications from his argument that Pereira should extend to any and all notices to appear. And therefore, void ab initio, all of the proceedings that followed, is simply too much for that narrow decision to bear. And again, I suggest that the court should join its sister circuits in rejecting that claim for the reasons stated in Karen Ginty. You notified us that the petitioner was removed while a motion for a stay was pending before this court. Correct, your honor. Do you have anything, how did that happen? So let me just preface what I'm about to say with the very strong caveat that I don't have any more specific information from my colleagues at DHS. So anything I'm about to say should not be taken as an affirmative declaration about what may or may not have happened. I can only glean that from DHS. What I do know is just these facts. The stay was filed in October of 2015. We opposed in early November. Petitioner apparently completed his criminal sentence in Connecticut in March of 2016. He was then transferred to ICE detention. He was held in Hartford for about a month. He was moved to Oakdale, Louisiana where they stage, and then he was removed on April 29th, 2016. Now at that time, the court had not ruled on the stay. It was pending, our opposition was pending, but the court did not rule. It was about two months later that the motion in June 2016 was actually submitted to the panel, or a panel. And then seven months later in January of 2017, the court got around to granting the stay. I will just point out, your honor, I don't think it's any coincidence that the stay was granted on the same day DeMaio was argued in the Supreme Court and the ruling asking the parties to address that 16B constitutionality issue. Sort of, I think, maybe not to explain, but certainly gives context to why the court granted the stay in the first place. My time has expired, may I continue answering your question, your honor? I think all I can glean from what I know from DHS, and again, we are more than happy to delve deeper to figure out what exactly happened. But it simply seems, your honor, that this was some sort of administrative error or oversight where the deportation officers in control either didn't know or didn't recall that a PFR and stay motion were pending. Again, it may be cold comfort, but I do point out that I do think it is a distinction with a difference that no stay was in place at the time he was removed. And the fact that he's now returned to the United States and is in a criminal proceeding is ironic in a way, because it also gives rise to a potentially new claim for relief and protection down the road if he's to be removed again. But it does appear that there was some error on behalf of the government there, your honor, but it doesn't affect the merits of this case in any way, and it shouldn't stall the court's adjudication of the case. Thank you. Your honor, just in reply, what's important to keep, and the government's burden trying to remove somebody who had legal status. So the NTA, unlike in a situation, as I had said before, like someone who had just come in three days ago or three weeks ago and then came in. This is their burden. It's not the respondent or the petitioner's burden to say, don't deport me. It's the government's burden to say, we can remove you. And so that burden goes to the initiating document, which would be the NTA. And I don't think it takes any imagination or really any stretch to say that when the Supreme Court said that you have to follow the requirements of the statute to have a valid charging document, even more so than in the circumstance of a stop time rule. When you're taking away someone's lawful permanent residence, you really need to make sure that NTA is meeting the grounds of the statute. So I think that if, not to speculate, but I do think that if this case was to get altitude, it would be found that particularly, more so even than in a stop time rule situation, the NTA has to meet the statutory requirements. The other thing is, on the flip side of this, for 20 something years, I've argued against the statute, right? Because the government always says, we're going to hold that immigrant to the letter of the statute. In fact, even in this case, where the government's trying to say it's 16A, even though we said 16B, you should hold them to the letter of the statute. So how can it be on the one side, we're holding the immigrant to the letter of the statute, and we're not going to hold the government? We're going to allow some swimming room to say, we can fix this. We can fix this. We returned it to the court. Now jurisdiction vests. The final point in terms of my client's untimely removal happening on the day. I know that Attorney McManus had nothing to do with it at all. In fact, he generously informed me, because I had lost touch with my client in the wilds of Honduras for many months. But I do think it adds additional import to this case, because he was subsequently convicted of having entered, and he had exited claiming a fear. So without adding more to that, I think when someone's claiming a fear of a place that they're being returned, I think the government has a higher burden to explain why they would remove them. Not Attorney McManus, of course, but DHS. Thank you. Thank you both. Well argued. We will take, we will not take a brief recess.